J. Mark Ward (Utah Bar No. 4436)
Utah Association of Counties
5397 Vine Street
Murray, UT 84107
Telephone: 801-265-1331
mark@uacnet.org

Attorney for Movants Utah Association of Counties
and Utah Sheriffs Association

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF UTAH; and GARY R. HERBERT, Governor of the State of Utah, in his official capacity,<br><br>Defendants.<br><br>UTAH ASSOCIATION OF COUNTIES and UTAH SHERIFFS ASSOCIATION,<br><br>Amici Curiae | ***AMICI CURIAE* MEMORANDUM BY THE UTAH ASSOCIATION OF COUNTIES AND UTAH SHERIFFS ASSOCIATION IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:13-CV-332-DN<br><br>Judge David Nuffer |

## STATEMENT OF INTEREST

Proposed *Amicus* Utah Association of Counties ("UAC") is a voluntary non-profit

organization whose directors are selected from the elected county officials of the 29 counties of

Utah.  Formed in 1924, UAC assists county elected officials by lobbying and advocating for

federal and state legislative and administrative actions and measures and at times litigating for

judicial decisions and outcomes that are beneficial to the counties of Utah and county residents.

County officers enumerated under Utah law include an elected sheriff.  Utah Code § 17-53-101(b).  Proposed *Amicus* Utah Sheriffs Association is a voluntary organization lead by representative county sheriffs periodically selected by their peers, who work in conjunction with UAC to represent the interests of the sheriffs of all 29 counties in Utah.

Counties in Utah together with the elected sheriffs of each county are vitally interested in maintaining the integrity of local law enforcement within county jurisdictional boundaries.

Proposed *Amici* UAC and the Utah Sheriffs Association are the main stakeholder groups who lobbied the Utah Legislature and Governor to enact the legislation at issue in the present case, legislation which proposed *Amici* urged as necessary to (1) clarify the boundary between federal and local law enforcement on public lands in Utah and (2) take a stand against a multi-year chronic pattern of illegal and unwarranted incursions and threatened incursions by federal land management agency personnel into the province of local county law enforcement efforts and authority.

County sheriffs are charged under Utah law to keep the peace and make lawful arrests within their respective counties.  Utah Code § 17-22-2(1).  As this memorandum will show, counties in Utah include substantial portions of land within their boundaries which are federally owned, over which the jurisdiction of the federal government by its own oft-repeated admission is proprietary in nature as opposed to exclusive or concurrent.  The ability of county sheriffs to maintain the integrity of local law enforcement authority within county boundaries, free from unwarranted interference and incursions upon that authority by federal land management agency personnel, depends on successful validation of the state laws at issue in this case.

Accordingly, the counties of Utah by and through their elected sheriffs have a direct stake in the outcome of this litigation.  As the duly authorized representatives of the counties of Utah and their elected sheriffs, proposed *Amici* wish to advise the Court why the state laws at issue in this case are valid, workable clarifications of the proper boundary between federal land management agency law enforcement and local county law enforcement.

## ARGUMENT

I.     **Federal Land Management Agency Personnel Can Trace No Authority Back to Congress to Enforce by Assimilation  State and Local Laws on Lands In Utah Administered by the Department of Interior and U.S. Forest Service.**

A.     **Federal Law Enforcement of State and Local Laws by Federal Assimilation Is Valid Only on Federal Lands That Are Subject to Exclusive or Concurrent Federal Jurisdiction.**

House Bill 155, 2013 General Session of the Utah Legislature ("HB 155"), contains a provision codified at Utah Code § 53-13-106.5(6) which quite correctly says no to certain land management agency personnel who think to exercise law enforcement authority based on state or local laws, or the federal assimilation of such laws, unless certain conditions are met.[1]   The only possible basis of authority for federal land management agency personnel to enforce state and

---

[1]     Utah Code § 53-13-106.5(6) as enacted by HB 155 states:
    (6)  The authority of a United States Forest Service employee who is not a trained and certified law enforcement officer and the authority of any employee of the United States Bureau of Land Management to take action based on the Utah Code, Utah Administrative Rules, or county or municipal ordinances, or a federal assimilation of any of these provisions, as a basis to stop, detain, arrest or cite persons for prosecution in the federal criminal justice system is not recognized, unless:
        (a) (i) the authority for the action has been expressly granted by an enacted federal statute and not by assimilation of any state laws or ordinances, and
        (i) is consistent with the Constitution of the United States; or
        (b) (i) the offense is an emergency and poses an immediate risk of bodily injury or damage to property;
        (ii) a state, county, or municipal law enforcement officer is not reasonably available to take action; and
        (iii) (A) the action is within the scope of the employee's or official's law enforcement power under a federal law that is enacted and that is not an assimilation of a state law or ordinance; and
        (B) the authorizing federal law is consistent with the Constitution of the United States.

local laws by assimilation is found in the Federal Assimilative Crimes Act, 18 U.S.C. § 13,

which states in part:

> (a)  Whoever within or upon <u>any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title</u>, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to like punishment.

(Emphasis added.)  According to the emphasized language above, the operation of the

Assimilative Crimes Act is limited to "places now existing or hereafter reserved or acquired as

provided in" 18 U.S.C, § 7.  The relevant part of Section 7 states:

> The term "special maritime and territorial jurisdiction of the United States" as used in this title, includes:
> . . .
> (3)     Any lands reserved or acquired for the use of the United States, <u>and under the exclusive or concurrent jurisdiction thereof</u>, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

In other words, Congressional authority to exercise law enforcement authority with respect to

federally assimilated state and local laws, applies only on federal lands which are <u>under the

exclusive or concurrent jurisdiction of the United States</u>.

**B.      <u>Department of Interior and U.S. Forest Service Lands in Utah Are Federal Proprietary Jurisdiction Lands, Not Exclusive or Concurrent Jurisdiction Lands</u>.**

**1.      1969 Department of Justice Report**

In May of 1969 (revised September 1969) the Land and Natural Resources Division of

the United States Department of Justice, Washington, D.C., prepared and submitted a report

entitled "Federal Legislative Jurisdiction" for the U.S. Public Land Law Review Commission

4

("1969 Department of Justice Report").  Relevant portions of the 1969 Department of Justice

Report are reprinted and attached as Exhibit A hereto.  The 1969 Department of Justice Report

states among other things:

-       "[T]he great bulk of federally owned areas which constitute the lands of
the public domain, including the great majority of such areas which have been
reserved or withdrawn for various Federal purposes, continue to be held by the
United States merely in a proprietorial status, with legislative jurisdiction
remaining in the respective host states."  Exhibit A page 53.

-       The other major areas of the PLLR Commission's interest, lands of the
national forests of the United States, also are in vast majority held by the United
States merely in a proprietorial status, with legislative jurisdiction remaining in
the respective host states."  Id. at 54.

-       2.      Exclusive legislative jurisdiction.  This term is applied when the
Federal  Government possesses, by whichever method acquired, all of the
authority of the State, and in which the State concerned has not reserved to itself
the right to exercise any of the authority concurrently with the United States
except the right to serve civil or criminal process in the area for activities which
occurred outside the area.  Id. at 57.

-       3.      Concurrent legislative jurisdiction.  This term is applied to those
instances wherein in granting to the United States authority which would
otherwise amount to exclusive legislative jurisdiction over an area, the State
concerned has reserved to itself the right to exercise, concurrently with the
United States, all of the same authority.  Id.

-       4.      Partial legislative jurisdiction.  This term is applied in those
instances wherein the Federal Government has been granted for exercise by it
over an area in a State certain of the State's authority, but where the State
concerned has reserved to itself the right to exercise, by itself or concurrently
with the United States, other authority constituting more than merely the right to
serve civil or criminal process in the areas (e.g., the right to tax private
property).  Id. at 57-58.

-       5.      Proprietorial interest only.  This term is applied to those instances
wherein the Federal Government has acquired some right or title to an area in a
State, but has not obtained any measure of the State's authority over the area.  In
applying this definition, recognition should be given to the fact that the United
States, by virtue of its functions and authority under various provisions of the
Constitution, has many powers and immunities not possessed by ordinary
landholders with respect to areas in which it acquires an interest, and of the

further fact that all its properties and functions are held or performed in a governmental rather than a proprietorial capacity.  Id. at 58.

-    d.    Bureau of Land Management.  This Bureau reports administering 327 section 10 properties aggregating 467,992,539.0 acres, and 48 non-section 10 properties aggregating 2,390,724.9 acres, a total of 375 properties aggregating 470,383,263.9 acres.  With only three exceptions, all the properties of this largest Federal landholding agency are in a proprietorial jurisdiction status.

Proprietorial jurisdiction is indicated as the most advantageous for all the several purposes for which real property is administered by the Bureau of Land Management.  It is reported that no problems have been encountered with this status in the past, and none are anticipated.  Id. at 88.

The 1969 Department of Justice Report at Appendix B Table 3 sets forth the

jurisdictional status of Federal lands by state and agency.  For the State of Utah, the figures are

as follows:

Forest Service Lands in Utah

| | |
|---|---|
| Exclusive Jurisdiction: | 0 acres |
| Concurrent Jurisdiction: | 0 acres |
| Partial Jurisdiction: | 0 acres |
| Proprietorial Jurisdiction: | 7,916,042.5 acres |

Exhibit A at 163, 189.

Department of Interior Lands in Utah (specifically Geological Survey, Bureau of Land Management, Bureau of Mines, National Park Service, Bureau of Reclamation and Bureau of Commercial Fisheries)

| | |
|---|---|
| Exclusive Jurisdiction: | 5.2  acres (BLM Administrative site in Cedar City (See id., at 88-89) |
| Concurrent Jurisdiction: | 5.0 acres  (Bureau of Mines) |
| Partial Jurisdiction: | 0 acres |
| Proprietorial Jurisdiction: | 27, 124,492.2 acres (including 24,864,084.4 acres BLM) |

Id.

## 2.    US Attorneys Criminal Resource Manual

Commenting on the Assimilative Crimes Act, 18 U.S.C. § 13, Section 667 of the U.S.

Attorneys Criminal Resource Manual states in part:

> The Assimilative Crimes Act, 18 U.S.C. § 13, makes state law applicable to conduct occurring on lands reserved or acquired by the Federal Government as provided in 18 U.S.C. § 7(3), when the act or omission is not made punishable by an enactment of Congress.
> Prosecutions instituted under this statute are not to enforce the laws of the state, but to enforce Federal law, <u>the details of which, instead of being recited, are adopted by reference</u>.

Exhibit B hereto (emphasis added).

Commenting on the 18 U.S.C. § 7(3) definition of land subject to the Assimilative

Crimes Act, Section 664 of the U.S. Attorneys Criminal Resource Manual states in part:

> The United States may hold or acquire property within the borders of a state without acquiring jurisdiction.  It may acquire title to land necessary for the performance of its functions by purchase or eminent domain without the state's consent. [Citation omitted.]  But it does not thereby acquire legislative jurisdiction by virtue of its proprietorship.  The acquisition of jurisdiction is dependent on the consent of or cession of jurisdiction by the state.  *See Mason Co. v. Tax Commission,* 302 U.S. 97 (1937); *James v. Dravo Contracting Co.,* 302 U.S. at 141-42.
> State consent to the exercise of Federal jurisdiction may be evidenced by a specific enactment or by general constitutional or statutory provision.  Cession of jurisdiction by the state also requires acceptance by the United States. [Citations omitted.]

Exhibit C hereto.

Section 1630 of the US Attorneys Criminal Resource Manual states in part:

> For purposes of federal criminal jurisdiction, government property can be categorized in three ways.  First, certain lands fall within the exclusive jurisdiction of the United States.  As this term implies, on these lands federal criminal law applies to the exclusion of state law.  Other properties acquired by the United States fall within the concurrent jurisdiction of the state and Federal governments.  Finally, the United States may acquire property without accepting any special criminal jurisdiction over it.  in this situation the United States simply retains proprietary jurisdiction over the property.

      The jurisdictional status of property acquired by the United States, is
important because it triggers the application of a series of federal laws, known as
federal enclave statutes.  These statutes apply to lands within "the special
maritime and territorial jurisdiction of the United States," a term which includes
"(a)ny lands reserved or acquired for the use of the United States, and under the
exclusive or concurrent jurisdiction thereof . . . . *See* 18 U.S.C. § 7(3).  Therefore,
any property under the exclusive or concurrent jurisdiction of the United States is
subject to these federal enclave laws.

     . . . .

     . . .   Therefore <u>United States Attorneys should be aware of the
jurisdictional status of all federal property within their respective districts</u>.

Exhibit D hereto (emphasis added).

### 3.    Relevant Utah Provisions

      Utah has not ceded or shared its jurisdiction with the United States with respect to Forest

Service and Department of Interior Lands.   Utah's Enabling Act, approved July 16, 1894,

evidences the fact that Utah ceded only ownership or title, not jurisdiction, to the United States

with respect to non-tribal federal lands.   Section 3 of the Utah Enabling Act at paragraph second

states in part:

      That the people inhabiting said proposed State do agree and declare that they
forever disclaim all right and title to the unappropriated public lands lying within
the boundaries thereof; and to all lands lying within said limits owned or held by
any Indian or Indian tribes; and that until the title thereto shall have been
extinguished by the United States, the same shall be and remain subject to the
disposition of the United States, <u>and said Indian lands shall remain under the
absolute jurisdiction and control of the Congress of the United States</u>[.]

Emphasis added.

      The fact this provision of the Enabling Act went to the trouble to specify that Congress

has jurisdiction over Indian lands, means the absence of any such express provision for non-

Indian unappropriated public lands stands in stark contrast and reflects the obvious intent for the

State to retain such jurisdiction, even though the people of the State gave up title ownership

thereto.

8

Nowhere in the Utah Code has Utah ever ceded or shared with the United States any jurisdiction over Forest Service and Department of Interior lands.  The 1969 Department of Justice Report conclusion that virtually all such lands in Utah are held in the category of proprietary jurisdiction, remains accurate at the present time.

C.     **HB 155 Validly Prohibits Federal Enforcement of State and Local Laws on Proprietary Jurisdiction Federal Lands That Are Adopted By Assimilation or Reference.**

Section 667 of the U.S. Attorneys Criminal Resource Manual really puts this issue in focus:  When it comes to federal attempts to enforce the law of a state, <u>the details of which, instead of being recited in a federal law, are adopted by reference</u>, the authoritative vehicle for such enforcement is the Assimilative Crimes Act (18 U.S.C. § 13 and by reference 18 U.S.C. § 7(3)).  But the operation of the Assimilative Crimes Act does not extend to Federal lands over which there is only proprietary jurisdiction.  Therefore, any attempt on Forest Service and Department of Interior lands to federally enforce a state or local law, <u>the details of which, instead being recited in a federal law, are adopted by reference</u>, is simply invalid.[2]

HB 155's prohibition against enforcing assimilated state and laws, as codified at Utah Code § 53-13-106.5. merely reflects the foregoing point.

The foregoing point is also reflected in a May 2012 PowerPoint slide presentation put on by the BLM Office of Law Enforcement & Security, entitled "Law Enforcement Authority & Jurisdiction for BLM Rangers, Special Agents & Managers," specifically two portions thereof entitled "Enforcement of State and Local Laws by BLM Rangers and Special Agents," and

---

[2]     Moreover, such an incursion violates the express policy behind the passage of FLPMA, that there shall be no "limitation upon any State criminal statute or upon the police power of the respective States, or as derogating the authority of a local police officer in the performance of his duties, or as depriving any State or political subdivision thereof any right it may have to exercise civil and criminal jurisdiction on the natural resource lands; or as amending, limiting, or infringing the existing laws providing grants of lands to the States."   Pub. L. 94-579, title VII, § 701(g)(6), Oct. 21, 1976, 90 Stat. 2786.  *See* note to 43 U.S.C. § 1701 - Congressional declaration of policy.

"Enforcement of state law through the Assimilative Crimes Act (18 USC 13)", reprinted and

attached as Exhibit E hereto.  Relevant provisions of these two portions include the following

statements:

- We know from our earlier discussion that BLM managed lands public lands fall under proprietary jurisdiction.  Under proprietary jurisdiction the State has retained all authority, therefore the laws, regulations, and ordinances of the State and its municipalities apply on public lands.

- The application of any state peace officer authority by a BLM Ranger or Agent is limited by the Tenth Amendment to the U.S. Constitution.  The 10th Amendment grants all powers to the States not delegated to the United States.  It further prohibits a State from expanding the jurisdiction of the federal government beyond what Congress intended.

- BLM policy requires that a written Memorandum of Understanding signed by the appropriate State Director, BLM Special Agent-in-Charge, and the authorized State or Local law enforcement official be in place prior to any BLM Ranger or Agent exercising any State Peace Officer authority.  Being sworn in as a special Deputy by the Sheriff is not enough.

- The authority of a State to grant State Peace Officer authority differs from State to State and in some cases does not exist.  In some cases where State law provides authority to convey State Peace Officer authority to BLM LEO's, the State or local entity may choose not to for various reasons at their discretion.

- The Assimilative Crimes Act sometimes adopts and applies state law to violations occurring on federal lands.  However the following three criteria <u>must</u> be met before a federal law enforcement officer can assimilate a state law under the Assimilative Crimes Act
    - The U.S. has exclusive or concurrent jurisdiction
    - There is no federal law covering the conduct, and
    - There is an applicable state law.

- As we learned in our earlier discussion on jurisdiction, the vast majority of public lands fall under proprietary jurisdiction.  Therefore the Assimilative Crimes Act <u>cannot</u> be used to enforce state law on BLM managed lands.

Exhibit E (emphasis in original).

Proposed *Amici* lobbied for HB 155 partially in response to repeated efforts and threats

by federal land management personnel who declared to various county sheriffs and other elected

10

officials that they possessed the authority to enforce any state law or local law of their choosing by virtue of "federal assimilation."  Such communications included one that occurred at the annual summer conference of the Utah State Association of Commissioners and County Councilmen near Moab, Utah in the Summer of 2011, wherein a number of federal land management agency law enforcement personnel from the BLM and Forest Service attended and had a discussion with County elected commissioners and council members.  In that meeting, federal personnel asserted repeatedly that they had the authority to enforce various state laws of their choosing by virtue of federal assimilation.  County officials expressed their disagreement, and the two sides agreed to disagree.  Similar communications have occurred over the past few years in meetings involving county sheriffs and federal land management agency law enforcement personnel.  Unable to achieve an understanding through dialogue, proposed *Amici* resorted to lobbying for HB 155.  As demonstrated above, various documents of the United States, from US Attorney resource manuals, to Department of Justice Reports, to BLM PowerPoint presentations exonerate, vindicate and validate HB 155's effort to say no to federal land management agency enforcement of state and  local laws through assimilation.


II.      **HB 155's Requirement That the Secretary of Interior Achieve Maximum Feasible Reliance on County Sheriff Law Enforcement Resources Before Activating Federal Law Enforcement Agents, Merely Tracks the Plain Language of FLPMA 43 U.S.C. § 1733(c).**

In virtually every county in Utah that contains significant amounts of BLM land, the BLM has sought assistance from county sheriffs from time to time in enforcing federal laws and regulations relating to public lands and resources.   In these circumstances, the requirements of FLPMA, 43 U.S.C. § 1733(c)1) are clear:  BLM's parent agency Department of Interior, through the Secretary of Interior, must "offer a contract to appropriate local officials having law

11

enforcement authority within their respective jurisdictions <u>with the view of achieving maximum</u> <u>feasible reliance upon local law enforcement officials in enforcing such laws and regulations</u>." (Emphasis added.)  The meaning of this provision is plain:  If the BLM is going to rely at all on local law enforcement to assist in the enforcement of federal land management related statutes and regulations, then it must do so fully until it has achieved maximum feasible reliance, i.e., exhausted all available local law enforcement resources at its disposal through contract with the appropriate local law enforcement authority.  If the BLM relies to any extent on the resources of a county sheriff, then it violates Section 1733(c) if it also employs its own federal agents without having first contracted with the county sheriff with a view to achieving maximum feasible reliance on county sheriff resources.

Hence HB 155 as codified at Utah Code § 53-13-106.5(4)(a) correctly declares the State's non-recognition of land management related law enforcement actions by any Dept of Interior employee, unless and until the Dept of Interior achieves maximum feasible reliance on county law enforcement officials in enforcing federal land management related laws and regulations.[3] Proposed *Amici* lobbied for this provision in response to the fact that BLM in many cases around the State, have repeatedly asked county sheriffs for assistance in enforcement of federal land

---

[3]  Proposed *Amici* submit that a facial challenge to the validity of 53-13-106.4(4)(a) is in appropriate, because county sheriffs do not intend to apply this provision except in the case where the BLM has sought <u>some</u> local law enforcement assistance, or to state it in the terms of Sec. 1733(a)(1), where the "Secretary determines that assistance is necessary in enforcing Federal laws and regulations relating to the public lands or their resources," in which case the requirement kicks in that the Secretary must contract with the Sheriff with a "view of achieving maximum feasible reliance upon local law enforcement officials," etc.  As stated above, as a practical matter this has already occurred in virtually every county in Utah with significant BLM lands, namely:  BLM has sought assistance from county sheriffs from time to time in the enforcement of land management related federal laws and regulations. Having sought such assistance, it is now incumbent on the Department of Interior as parent agency of the BLM to comply with the contractual and maximum feasible reliance provisions of 43 U.S.C. § 1733(c).

Proposed *Amici* also note that the reference on line 160 of HB 155 to 43 U.S.C. Sec. 1733(c)(2) appears to be a clerical statutory drafting error, as the bill's amendment to 53-13-106.5(4)(a) was intended to track 43 U.S.C. 1733(c)(1).  This citation error is not material, let alone dispositive, to the underlying argument, as the overall substance of HB 155's amendment to  53-13-106.5(4)(a) remains what it is, a requirement that is like unto 43 U.S.C. Sec. 1733(c)(1).

management related laws and regulations, without properly contracting for such services as required by 43 U.S.C. § 1733(c), both in terms of not contracting at all, and in terms of only partially relying on local law enforcement resources instead of contracting with a view to achieving maximum feasible reliance on county law enforcement resources, as 43 U.S.C. § 1733 (c)(1) requires.

III.    **Plaintiffs' Fixation On an Extreme Interpretation of HB 155 That Prohibits All But the Enforcement of Express Federal Statutes, Is a Red Herring That Cannot Sustain a Facial Challenge to HB 155.**

Even before passage of HB 155, Utah Code §§ 53-13-106.5(2) and 53-13-106.5(5) already stated that Utah does not recognize a federal land management law enforcement action unless the action has been expressly granted under a constitutionally valid federal statute. Proposed *Amici* have always understood the practical application of these provisions to include both federal land management statutes and federal regulations properly enacted pursuant to the scope of federal land management statutes.   In other words, if the law enforcement action rests on the authority of a regulation that derives from the express authority of a relevant statute, as opposed to a regulation that exceeds the scope of authority of an authorizing federal statute, then Utah and proposed *Amici* have recognized and will continue to recognize the validity of that law enforcement action.

This is consistent with the fact that Utah Code § 53-13-106.5(1)(i)(A) as amended by HB 155 defines the "exercise of law enforcement authority" to mean actions based on a federal statute, <u>regulation or rule</u>.   It is consistent with the fact that Utah Code § 53-13-106.5(4)(a)(ii) as amended by HB 155 refers to the Secretary of Interior's enforcement of federal laws <u>and regulations</u> for the management, use and protection of lands managed by the United States Bureau of Land Management.   And it is consistent with the fact that Utah Code § 53-13-

13

106.5(4)(b) as it existed even before passage of HB 155, refers to the Secretary of Interior's enforcing of federal laws <u>and regulations</u> relating to federally managed lands or t5he resources on those lands.

      This pretended fear by plaintiffs that the State and the county sheriffs will somehow run roughshod over federal enforcement of federal land management regulations properly enacted within the scope of federal land management statutes, has a rather hollow ring to it given the fact that similar language has been part of Section 106.5 long before passage of HB 155.  Such feigned concern is hardly the stuff on which a constitutional facial challenge rests.  Plaintiff is better advised to wait and see if the State or county sheriffs ever actually apply the law in such a way as to impede federal law enforcement actions based on federal regulations validly enacted pursuant to Federal land management statutes, and then bring an as-applied challenge to such conduct.  After all, as shown above substantial portions of § 53-13-106.5 referring to statutes only, have been in effect long before the passage of HB 155; yet plaintiffs were not found to be complaining about those provisions or clamoring for a TRO or preliminary injunction to stop their dreaded enforcement.  Furthermore, county sheriffs as proposed *Amici* are aware of no effort to apply these provisions in such a manner.  Plaintiffs indeed have not cited any episodes where regulation-based federal law enforcement actions were ever impeded by the State or county sheriffs.

      Simply stated, a facial challenge under these circumstances is unwarranted.  And apparently no facts or circumstances exist to support an as-applied challenge either.

DATED THIS 7th day of June, 2013.

/s/ _____

J. MARK WARD
Utah Association of Counties
Attorney for Proposed *Amici* Utah
Association of Counties and Utah Sheriffs
Association

## CERTIFICATE OF SERVICE

This is to certify that copies of the foregoing **Amici Curiae Memorandum By the Utah Association of Counties and Utah Sheriffs Association In Opposition to Plaintiffs' Motion for Preliminary Injunction and exhibits thereto** were served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

Carlie Christensen
carlie.christensen@usdoj.gov

Ryan B. Parker
ryan.parker@usdoj.gov

Scott A. Risner
scott.risner@usdoj.gov

Jeannette F. Swent
jeannette.swent@usdoj.gov

Paul H. Tonks
ptonks@utah.gov

Meb W. Anderson
mebanderson@utah.gov

/s/ _____

J. Mark Ward

15