STUART F. DELERY
Acting Assistant Attorney General
DAVID B. BARLOW (Bar #13117)
United States Attorney
CARLIE CHRISTENSEN (Bar #633)
JEANNETTE F. SWENT (Bar #6043)
Assistant United States Attorneys
ARTHUR R. GOLDBERG
Assistant Director, Federal Programs Branch
RYAN PARKER (Bar # 11742) *
SCOTT RISNER (MI Bar #P70762) *
Trial Attorneys
Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone:   (202) 514-2395
Facsimile:   (202) 616-8470
E-mail:      scott.risner@usdoj.gov

Attorneys for the United States

*Admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| The United States of America,<br><br>Plaintiff,<br><br>v.<br><br>The State of Utah; and Gary R. Herbert, Governor of the State of Utah, in his official capacity,<br><br>Defendants. | Case No. 2:13-CV-00332-DN<br><br>**UNITED STATES' MEMORANDUM IN RESPONSE TO THE *AMICI CURIAE* MEMORANDUM SUBMITTED BY THE UTAH ASSOCIATION OF COUNTIES AND UTAH SHERIFFS ASSOCIATION** |

### INTRODUCTION

After the United States filed its motion for a preliminary injunction, the Utah

Association of Counties and the Utah Sheriffs Association jointly sought and were

granted leave to file a memorandum as *Amici Curiae* in opposition to the United States'

motion. In their memorandum, the *Amici* raise three arguments. Two of those arguments – the arguments set forth in subsections II and III – were also raised by the State of Utah and are addressed in the United States' reply memorandum. The *Amici* devote the majority of their memorandum, however, to a novel argument that was not advanced by the State. The United States thus addresses that argument separately in this response.

The *Amici*'s primary argument concerns Section 53-13-106.5(6), as amended by House Bill (HB) 155, which purports to prohibit certain USDA and DOI employees from enforcing certain federal regulations within Utah. The *Amici* contend that this provision "merely reflects" federal law, which they argue does not permit USDA or DOI to enforce federal regulations that have "adopted by reference" standards from state law.[1] *See* [Amicus Br. 9](Amicus Br. 9). To reach that conclusion, however, the *Amici* argue that the United States has only proprietary, rather than concurrent or exclusive, jurisdiction over public lands in Utah, and that the Assimilative Crimes Act (ACA), [18 U.S.C. § 13](18 U.S.C. § 13), does not apply on such lands.

The *Amici*'s argument – for which they provide no supporting case law – is wrong, as it offers a flawed reading of the ACA, relies on a theory of proprietary jurisdiction that the Supreme Court rejected long ago, and ignores the statutory authorities cited in the United States' motion. Section 53-13-106.5(6) is preempted by statutes that Congress has enacted under authority granted by the Property Clause, and

---

[1] As an initial matter, it is important to note that, even if the *Amici* were correct and Congress had not authorized DOI and USDA to issue regulations that adopt standards from state law, Section 53-13-106.5(6) would still be invalid under the Supremacy Clause. As explained in the United States' reply, the doctrine of intergovernmental immunity has no exception for state laws that are consistent with federal law, and the law is preempted because a state may not impose its own penalties for a lack of compliance with federal law.

regulations that USDA and DOI have enacted under authority granted by those statutes. Because such federal authority is derived from the Property Clause, the fact that the United States exercises proprietary jurisdiction over the land in question is wholly irrelevant. *Kleppe v. New Mexico*, 426 U.S. 529, 542-43 (1976). The *Amici*'s argument to the contrary fails to meaningfully rebut the United States' showing that Section 53-13-106.5(6) conflicts with federal law.

## ARGUMENT

### THE *AMICI* FAIL TO DEMONSTRATE THAT USDA AND DOI LACK THE AUTHORITYTO PROMULGATE REGULATIONS ADOPTING STATE LAW STANDARDS AS A MEANS OF PROTECTING FEDERAL LANDS

The *Amici*'s argument conspicuously lacks any mention of the statutes that give rise to the preemption of Section 53-13-106.5(6). As set forth in detail in the United States' motion, Congress has exercised the power granted to it under the Property Clause of the Constitution to grant broad authority to the Secretaries of the Interior and Agriculture for the protection of federal lands. Specifically, Congress has authorized the Secretaries to promulgate regulations governing the use of federal lands. *See, e.g.*, 43 U.S.C. § 1733(a) (authorizing the Secretary of the Interior to "issue regulations necessary to implement the provisions of this Act with respect to the management, use, and protection of the public lands, including any property located thereon"); 16 U.S.C. § 551 (authorizing the Secretary of Agriculture to make such rules and regulations as necessary to regulate the occupancy and use of the national forests, and to preserve them from destruction).

In exercising that authority, the Secretaries have adopted a wide range of regulations that protect federal lands and the persons and property located thereon. In some instances, those regulations incorporate standards from state law. *See e.g.*, 36

3

C.F.R. § 261.12 (prohibiting the operation on National Forest System roads of motor vehicles that violate the load, weight, height, length, or width limitations prescribed by state law); 43 C.F.R. § 8341.1 (Bureau of Land Management regulation prohibiting the use of off-road vehicles without a valid state operator's license or in other ways that violate state laws).

Rather than acknowledge and address the authority granted by these statutes, the *Amici* argue that a different statute – the Assimilative Crimes Act, 18 U.S.C. § 13 – does not provide authority for USDA or DOI to incorporate state law standards into their regulations. Amicus Br. 3. In making this argument, the *Amici* evince a fundamental misunderstanding of what the ACA is and how it relates to other federal laws and regulations. The ACA makes state criminal laws applicable to conduct occurring on certain federal lands, provided that federal criminal law does not define an applicable offense for the misconduct committed. *United States v. Pethink*, 513 F.3d 1200, 1201 n.1 (10th Cir. 2008) (The ACA "was enacted to fill gaps in criminal law otherwise applicable to federal enclaves by incorporating state law."). By its express terms, the ACA applies where federal law has *not* otherwise regulated the conducted in requirement. In situations like these, involving restrictions embodied in federal statutes and regulations promulgated pursuant to those statutes, the ACA simply does not apply.

The ACA does not displace existing federal law. It also does not purport to authorize agencies to promulgate regulations or to limit their ability to do so. *See* 18 U.S.C. § 13. Nothing in the ACA affects the authority of federal agencies to promulgate

4

regulations, including regulations that incorporate state law standards. Indeed, when other federal law applies, it is the ACA that gives way.[2]

As explained in the United States' motion, courts have routinely upheld regulations that incorporate state law standards as proper exercises of the authority granted to federal agencies by Congress under the Property Clause. *See* Pl.'s Mot. 29-30. Yet the *Amici*, like the State of Utah, offer no contrary case law in response, nor do the *Amici* even attempt to explain why the precedent cited by the United States is incorrect. The *Amici* also do not challenge the validity of the various statutes referenced in the United States' motion, or the United States' authority to promulgate regulations pursuant to those statutes. In light of the *Amici*'s failure to address the actual authorities relied on by the United States, their lengthy discussion of the ACA is not relevant to the issues before the Court.

The *Amici* also spend several pages contending that the United States lacks the authority to enact regulations that adopt state law standards because of the type of jurisdiction the federal government has over the land it possesses in Utah. The *Amici* rely heavily on their claim that the United States exercises only proprietary, rather than exclusive or concurrent, jurisdiction over the federal land at issue. But while the nature of the federal government's jurisdiction may be relevant when the ACA is implicated, it has no import here, where the statutes at issue were enacted under the Property Clause.

---

[2] The interplay of the ACA and such regulations is demonstrated by *United States v. Palmer*, 956 F.2d 189 (9th Cir. 1992). There, the Ninth Circuit considered the application of 36 C.F.R. § 4.23, a regulation that governs the operation of a motor vehicle under the influence of alcohol or drugs in a national park by adopting standards from state law. After the defendant was convicted of driving under the influence in Yosemite National Park, the Ninth Circuit determined that the ACA did not apply because the conduct was separately prohibited by the federal regulation. *Id.* at 191.

It is settled law that Congress's authority under the Property Clause is not limited by the nature of the federal government's jurisdiction over the land at issue, and that the statutes passed by Congress under that authority reach lands of proprietary jurisdiction. In *Kleppe v. New Mexico*, 426 U.S. 529, 534-35 (1976), the State of New Mexico challenged the constitutionality of the Wild Free-Roaming Horses and Burros Act.  Much like the *Amici* does here, the State of New Mexico argued that Congress did not have the authority to regulate burros and wild horses on federal land because the United States had only proprietary rights, and not exclusive jurisdiction, over the land at issue.  *Id.* at 541-42.  The Court rejected New Mexico's argument, stating in no uncertain terms that the type of jurisdiction the United States has over its property is irrelevant to the exercise of its power under the Property Clause:

> [W]hile Congress can acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession, the presence or absence of such jurisdiction has nothing to do with Congress' powers under the Property Clause.  Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause.  And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause.

*Id.* at 542-43 (internal citations omitted).  Recognizing that the power entrusted to Congress under the Property Clause to regulate federal property is without limitation, the Court upheld the Act.  *Id.* at 539, 547.

The clear pronouncement of *Kleppe* extends to regulations that are adopted pursuant to statutes enacted under the Property Clause.  This was recognized by the Fifth Circuit in *United States v. Gliatta*, 580 F.2d 156, 157 (5th Cir. 1978), which appropriately labeled the argument now raised by the *Amici* as "the exclusive jurisdiction red herring."

In *Gliatta*, the Fifth Circuit applied *Kleppe* to agency regulations, recognizing that, "[b]eyond doubt, the Property Clause authorizes the enactment and enforcement of regulations which . . . are designed to maintain safety and order on government property" even absent exclusive or concurrent jurisdiction. *Id.* at 160. *See also United States v. Garfield*, 122 F. Supp. 2d 1201, 1235 (D. Utah 2001) (recognizing that "federal authority over federal lands may be enlarged, and state authority within the public lands may indeed be curtailed, either through the exercise by Congress of the Property Power, or by a state's cession of land or jurisdiction to the United States, or both").

Moreover, the *Amici* offer no reason to find that the plenary power granted by the Property Clause does not permit the promulgation of regulations that adopt standards from state law. Certainly, the *Amici* have identified no cases recognizing such a limitation. To the contrary, courts have upheld such regulations in the face of similar challenges. For example, in *United States v. Bohn*, 622 F.3d 1129 (9th Cir. 2010), a defendant challenged his conviction under "an NPS traffic regulation that adopts the substantive prohibitions of state law, including the requirement that motorcyclists wear helmets." *Id.* at 1132. He argued that because the United States had only proprietary jurisdiction over the road in question, the regulation exceeded the authority delegated to the agency by Congress. *Id.* at 1133. The Ninth Circuit dispensed of this argument by explaining that "the Property Clause grants Congress plenary power to 'determine what are needful rules respecting the public lands.' That power does not depend on the existence of concurrent or exclusive jurisdiction." *Id.* at 1134 (quoting *Kleppe*, 426 U.S. at 539) (internal citations omitted).

7

Finally, there is little doubt that the regulations adopted by DOI and USDA are valid exercises of the statutory authority granted to those agencies. As explained in the United States' motion, the regulations at issue in this case were adopted to protect the federal lands and the persons and property located thereon. The *Amici* do not argue otherwise.[3]

## CONCLUSION

In its motion, the United States relied on specific statutes, regulations, and controlling case law to show that preliminary relief is both appropriate and necessary. The United States demonstrated that the authority granted by the Property Clause to Congress "is without limitation," *United States v. City & Cnty. of San Francisco*, 310 U.S. 16, 29 (1940); that Congress' power is not dependent on the nature of the United States' jurisdiction over the land in question, *Kleppe*, 426 U.S. at 542-43; and that Congress has given DOI and USDA broad authority to enact regulations that protect federal lands and the persons and property thereon, *see, e.g.*, 43 U.S.C. § 1733(a); 16 U.S.C. § 551. In their memorandum, the *Amici* ignored the relevant authorities cited by

---

[3] Indeed, the *Amici* do not identify a single regulation in their brief. This is striking given the breadth of their argument. If the *Amici*'s arguments were accepted, it would impose unprecedented restrictions on the types of regulations that federal agencies could adopt and enforce. This would have broad consequences in Utah as well as other states with substantial federal land, as it would upend longstanding regulations covering a range of important subjects. It is also notable that the cases cited by the United States have addressed these issues in the context of specific statutes and regulations. If there were real doubt about federal agencies' authority to issue regulations that adopt standards from state law, as the *Amici* suggest, that issue could be raised in defense to a citation or arrest (as it was in *Bohn*). Instead, the *Amici* (and, to a lesser extent, the State of Utah) ask this Court to upend federal authority on a basis of an abstract argument of tremendous breadth in which they identify no cases where a court has accepted their argument, even in the context of a single regulation. That every case identified in the briefing thus far supports the United States' position merely underscores that the United States is likely to succeed on the merits of its claims.

the United States and focused, instead, on an irrelevant statute and a legal theory that was emphatically rejected by the Supreme Court long ago. The *Amici*'s brief fails to meaningfully rebut the United States' showing that t is likely to succeed on the merits of its claim.

Dated: June 25, 2013.                    Respectfully submitted,

                                                              */s/ Scott Risner*
                                                              RYAN PARKER (Bar # 11742) *
                                                              SCOTT RISNER (MI Bar #P70762) *
                                                              Trial Attorneys
                                                              Department of Justice
                                                              Civil Division, Federal Programs Branch
                                                              20 Massachusetts Ave., N.W.
                                                              Washington, DC 20001
                                                              Telephone:   (202) 514-2395
                                                              Facsimile:     (202) 616-8470
                                                              E-mail:          scott.risner@usdoj.gov

                                                              Attorneys for the United States

                                                              *Admitted *pro hac vice*